UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA MARIE SLATER,

                       Plaintiff,

v.                                                                                   Case No. 5:14-CV-255 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        ELIZABETH ROTHSTEIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

Glenn T. Suddaby, Chief United States District Judge,

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Lisa Marie Slater ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13, 14.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 22, 1988. (T. 126.) She graduated high school. (T. 132.) Generally, Plaintiff's alleged disability consists of bipolar, depression, anxiety, panic attacks, Graves' disease, and learning disability. (T. 131.) Her alleged disability onset date is March 1, 2008. (T. 126.) Her date last insured is September 30, 2009. (*Id.*) She previously worked as a certified nurse's aide ("CNA") and driver. (T. 132.)

### B. Procedural History

On April 21, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income Benefits ("SSI") under Title XVI, of the Social Security Act. (T. 106.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 4, 2012, Plaintiff appeared before the ALJ, Marie Greener. (T. 26-46.) On November 7, 2012, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-25.) On January 28, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-21.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2009 and Plaintiff had not engaged in substantial gainful activity since March 1, 2008. (T. 15.) Second, the ALJ found that Plaintiff had the severe impairment of an affective disorder. (*Id.*) Third, the ALJ found that Plaintiff

2

did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but [Plaintiff] [was] unable to perform complex tasks and she need[ed] to avoid confrontation with others (i.e. arguing with customers, negotiating and detaining/restraining others)." (T. 18.) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. (T. 19-20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially six separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to develop the record. (Dkt. No. 13 at 10-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to find Plaintiff's Graves' disease, migraines, and physical impairments severe at step two. (*Id.* at 12-15.) Third, Plaintiff argues the ALJ erred in finding that Plaintiff's mental impairment did not meet or medically equal a Listing. (*Id.* at 15-17.) Fourth, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 17-20.) Fifth, Plaintiff argues the ALJ's credibility analysis was legally erroneous and unsupported by substantial evidence. (*Id.* at 21-24.) Sixth, and lastly, Plaintiff argues the ALJ's step five determination was unsupported by substantial evidence. (*Id.* at 24-25.)

### B. Defendant's Arguments

In response, Defendant makes six arguments. First, Defendant argues the ALJ properly assessed the evidence pertaining to Plaintiff's intellectual functioning. (Dkt. No. 14 at 5-7 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ correctly considered the severity of Plaintiff's impairments at step two. (*Id.* at 7-10.) Third, Defendant argues the ALJ correctly found that Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 10-13.) Fourth, Defendant argues the ALJ properly considered the medical evidence of record and her RFC finding was supported by substantial evidence. (*Id.* at 13-20.) Fifth, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 20-23.) Sixth, and lastly, Defendant argues the ALJ correctly relied on the Meidcal-Vocational Guidelines at step five. (*Id.* at 23-24.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

5

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Developed the Record Regarding Plaintiff's Alleged Intellectual Disability.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 5-7 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed to develop the record regarding Plaintiff's alleged borderline intellectual functioning because the ALJ did not order an intelligence exam. (Dkt. No. 13 at 10 [Pl.'s Mem. of Law].) To be sure, an ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d). However, reviewing courts have held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012). Further, whether or

not a consultative exam is obtained is made on a case-by-case basis and at the discretion of the Commissioner. 20 C.F.R. §§ 404.1517, 404.1519, 416.917, 416.919.

Here, the record did not indicate a severe intellectual impairment. Consultative examiner, Dennis Noia, Ph.D., opined that Plaintiff's intellectual functioning was in the borderline range; however, she was still capable of understanding and performing simple tasks, she could regularly attend to a routine and maintain a schedule, she could learn new tasks, and she could make appropriate decision. (T. 445-446.) Therefore, the ALJ was within her discretion to not order an intelligence evaluation where the record did not contain any obvious gaps and the record failed to indicate an intellectual impairment that prevented Plaintiff from performing more than simple work. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. App'x. 29, 32 (2d Cir.) (finding an ALJ was obligated to order a consultative examination where the facts did not warrant or suggest the need for it).

### B.     Whether the ALJ's Step Two Determination was Proper.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 7-10 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54

F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (*quoting Bowen,* 482 U.S. at 154 n.12).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (*citing Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Plaintiff asserts that the ALJ erred in her step two determination that Plaintiff's impairments of Graves' disease, migraine headaches, and back impairment were non-severe impairments. (Dkt. No. 13 at 12-15 [Pl.'s Mem. of Law].) Substantial evidence supports the ALJ's step two determination that Plaintiff's Graves' disease, migraine headaches, and back impairment were non-severe impairments.

Plaintiff contends that her Graves' disease decreased her ability to grip. (Dkt. No. 13 at 12 [Pl.'s Mem. of Law].) Upon examination, consultative examiner Kalyani Ganesh, M.D. observed intact hand and finger dexterity and full grip strength. (T. 449.) Dr. Ganesh also observed full range of motion in Plaintiff's upper extremities. (*Id.*) Overall, Dr. Ganesh opined Plaintiff had no gross physical limitations for sitting, standing, walking or the use of upper extremities. (T. 450.) Plaintiff also received treatment from Family Care Medical Group for her Graves' disease. Although there are notations indicating "fine tremor on outstretched hands," overall, the treatment notes fail to indicate any functional limitations stemming from Plaintiff's Graves' disease. (T. 513, 516, 519, 522, 525, 536, 567, 570, 573, 576.) Plaintiff asserts her Graves' disease also affects her ability to adapt to changes in the workplace. (Dkt. No. 13 at 14 [Pl.'s Mem. of Law].) However, Plaintiff fails to cite to the record for support of this argument and instead provides a general description of Graves' disease symptomology. (*Id.* at 13 n.6.)

The ALJ also properly evaluated Plaintiff's migraine headaches at step two. The ALJ concluded that Plaintiff headaches were non-severe because objective medical imaging was negative and Plaintiff's condition was treated with medication, indicating no more than minimal functional limitations from such impairment. (T.16.) The ALJ also properly evaluated Plaintiff's back impairment. The ALJ relied on Dr. Ganesh's

9

examination that showed full range of motion, full strength, no sensory deficits and no atrophy in Plaintiff's back. (*Id.*) Therefore, the ALJ properly evaluated Plaintiff's impairments at step two. Further, any error at this step is deemed harmless as the ALJ proceeded with the sequential process and took into consideration the combined effects of Plaintiff's impairments in her RFC analysis and determination.

### C. Whether the ALJ's Step Three Determination was Proper.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 10-13 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step three of the sequential process, the ALJ must determine whether Plaintiff's impairment met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.909) ("the Listings"). The ALJ determined that Plaintiff's affective disorder did not met or equal the criteria of Listing 12.04. (T. 16.) Plaintiff argues that her affective disorder meets the "paragraph B" criteria of Listing 12.04. (Dkt. No. 13 at 15 [Pl.'s Mem. of Law].) Listing 12.04 paragraph B criteria requires an affective disorder that results in at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04(B). However, substantial evidence supports the ALJ determination that Plaintiff's affective disorder does not meet or equal the criteria outlined in "paragraph B" of Listing 12.04.

The ALJ properly relied on medical evidence in the record and Plaintiff's testimony, indicating that Plaintiff did not have marked limitations in the areas outlined in paragraph B. For example, Plaintiff alleges the ALJ failed to take into account the full severity of Plaintiff's limitations in social functioning. (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].) The ALJ did take Plaintiff's social limitations into account, noting Plaintiff "freaks out" on people. (T. 16.) However, the ALJ also properly noted that the record indicated that Plaintiff was also described as "cooperative" and overall she was "moderately" appropriate in social skills and presentation. (*Id.*) These limitations are reflected in the RFC determination which limits Plaintiff to occupations in which she can avoid conflict. Therefore, for the reasons stated herein, and in Defendant's brief, the ALJ's step three determination was supported by substantial evidence because she relied on medical evidence in the record and Plaintiff's testimony in support of her conclusion that Plaintiff did not meet or equal Listing 12.04.

### D. Whether the ALJ's RFC Assessment was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 13-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's RFC is "the most [the plaintiff] can do despite [her] limitations." 20 C.F.R. §§ 404.1545, 416.945. Plaintiff argues the ALJ erred in her RFC assessment because she failed to obtain a medical source statement from Plaintiff's treating sources, Dr. Rao and from Daniel Karn, P.A. (Dkt. No. 13 at 18 [Pl.'s Mem. of Law].) Further, Plaintiff argues the ALJ's RFC determination failed to provide for Plaintiff's physical and mental impairments in accordance with SSR 96-8p. (*Id.* at 20.)

As stated in Part IV.A, the ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d). Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e)); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008). However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. A source's opinion is complete where it includes all of the factors set forth in 20 C.F.R. § 416.913[1] and there is no indication that further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

Here, the record was complete and adequate enough to provide substantial evidence to support the ALJ's RFC determination. The ALJ's RFC determination was supported by the medical source statement of Dr. Noia and the non-examining State agency consultant L. Blackwell.[2] The record contained treatment notes from Plaintiff's treating providers with Family Care Medical Group as well as treatment records from emergency departments. The ALJ properly considered all the medical evidence in the

---

[1] Pursuant to 20 C.F.R. § 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

[2] Plaintiff argues the ALJ erred in providing Dr. Blackwell with "significant weight;" however, an ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

record, including notations by Mr. Karn, Plaintiff's treating physician's assistant. (T. 19.) Therefore, the ALJ was not required to re-contact Plaintiff's treating source specifically to obtain a medical source statement because the record in Plaintiff's case was complete. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (where the ALJ had all the treatment notes from the plaintiff's treating physician and a functional opinion from a consultative examiner, the ALJ had no further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians).

Plaintiff argues the ALJ failed to comply with SSR 96-8p, (S.S.A. July 2, 1996). (Dkt. No. 13 at 20-21 [Pl.'s Mem. of Law].) SSR 96-8p provides an ALJ with guidelines for assessing a plaintiff's RFC. Plaintiff argues the ALJ erred in her RFC determination, because the ALJ's RFC determination prescribed "no physical or mental limitation." (*Id.* at 20.) However, the ALJ's RFC determination does provide for mental limitations in that it limits Plaintiff to simple work that does not involve confrontation. (T. 18.) To be sure, the RFC determination does not provide for physical limitations. (*Id.*) However, Plaintiff failed to establish that her physical medical impairments were severe and caused more than minimal effects on her ability to perform work.

SSR 96-8P states: "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8P (S.S.A. July 2, 1996). Plaintiff appears to argue the ALJ erred in finding no physical limitations because SSR 96-8p allows for a finding of no physical limitations only in cases that 1) there is no allegation of a physical limitations and 2) the record does not

support such limitations. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) The purpose of the SSR 96-8p is to stress to ALJs that:

> [i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the individual had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.)

SSR 96-8p. The Ruling does not mandate an ALJ to provide for limitations in her RFC determination because there is an allegation of limitations and the record provides support. Here, the ALJ properly assessed Plaintiff's impairments at step two of the sequential process, as discussed in Part IV.B. The ALJ properly determined that Plaintiff's physical impairments did not significantly limit Plaintiff's ability to perform basic work functions. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Further, the ALJ's RFC determination was supported by substantial evidence as discussed herein. The ALJ relied on the medical source statement of Dr. Ganesh opining Plaintiff had no physical limitations in sitting, standing, walking, or the use of her upper extremities. (T. 450.) Therefore, the ALJ's RFC determination was supported by substantial evidence in the record and the ALJ did not err in her physical RFC determination because the evidence in the record does not support greater physical restrictions than accounted for.

### E. Whether the ALJ's Credibility Assessment was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 20-22 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*,

14

614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d

15

Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible." (T. 19.) In support of her determination, the ALJ reasoned that Plaintiff's statement regarding her symptoms were inconsistent with objective medical evidence, inconsistent with her activities of daily living, and that Plaintiff had not been compliant with treatment. (*Id.*)

Plaintiff argues the ALJ's determination failed to provide specific reasoning to support her credibility determination. (Dkt. No. 13 at 22 [Pl.'s Mem. of Law].) First, the ALJ did provide specific reasoning in making her credibility determination in accordance with the factors outlined in 20 C.F.R. §§ 404.1529, 416.929. The ALJ specifically discussed objective medical evidence, activities of daily living, and treatment compliance. Failure to discuss each and every factor in the Regulations is not in and of itself grounds for remand. *See Halloran v. Barnhart,* 362 F.3d 28, 31–32 (2d Cir.2004) ("[w]e require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear").

Plaintiff also argues the ALJ erred in discrediting Plaintiff's testimony due to non-compliance with treatment. (Dkt. No. 13 at 23 [Pl.'s Mem. of Law].) Plaintiff stresses that her "persistence" in seeking treatment outweighs her non-compliance. (*Id.* at 22-23.) To be sure, faulting a plaintiff with diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." *See Day v. Astrue,* No. 07 CV 157, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. Jan. 3, 2008) (noting that it "is a questionable

16

practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (*quoting Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996)). The record indicated Plaintiff was discharged from mental health treatment due to non-attendance and failure to undergo required blood testing. (T. 434.) Notations stated Plaintiff ceased treatment because she felt it wasn't helping her. (*Id.*) Here, Plaintiff pursued treatment, but failed to comply and voluntarily ceased treatment. The ALJ did not determine Plaintiff was not disabled due to her non-compliance, the ALJ determined Plaintiff's statements concerning the limiting effects of her mental health symptoms were less credible. An ALJ may rely on Plaintiff's non-compliance as a part of her credibility assessment. SSR 96-7p, 1996 WL 374186, at *7 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").[3] In addition, non-compliance was just one factor the ALJ took into consideration in her overall credibility analysis.

Therefore, the ALJ properly assessed Plaintiff's credibility. The ALJ is not obligated to accept Plaintiff's testimony regarding her limitations and symptoms without question. It is within the ALJ's discretion to evaluate Plaintiff's credibility in light of the evidence in the record. *Genier,* 606 F.3d at 49 ("the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in

---

[3] The treatment notes the ALJ cited to indicating non-compliance also provide the reasoning for Plaintiff's non-compliance; therefore, the ALJ was aware of Plaintiff's reasons for not pursuing mental health treatment in accordance with SSR 96-7p.

17

weighing the credibility of the claimant's testimony in light of the other evidence in the record").

### F. Whether the ALJ's Step Five Determination was Proper.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 23-24 [Def.'s Mem. of Law].) The Court adds the following analysis.

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 20, 2015
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge